YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY *v.* BERTHA
BYRD ET AL.

[42 South. Rep., 286.]

1. RAILROADS. *Passenger. Contributory negligence. Riding on car
   platform. Question of fact.*
   Whether a passenger who, when unable to obtain a seat on a rapidly
   moving railroad train, went upon the platform of a coach and
   was thrown therefrom by the lurching of the train was guilty of
   such contributory negligence as to bar a recovery is a question of
   fact.

2. SAME. *Defense, what essential to.*
   A railroad company cannot escape liability for injuries to a pas-
   senger thrown from a train by its lurching, if he were free from
   contributory negligence, unless the train was operated with rea-
   sonable safety and run with care.

3. SAME. *Contributory negligence. When a defense.*
   An action otherwise made out can be defeated on the ground of
   contributory negligence only where the plaintiff's negligence
   caused or materially contributed to his injuries.

4. SAME.  *Abandonment of injured passenger*.

> The negligence of a passenger causing him to be thrown from a train will only bar a recovery for damages attributable to the fall, and the railroad company will be liable to him for damages because of neglect to give him proper attention after the accident.

5. SUPREME COURT PRACTICE.  *Appeal.  Modified instruction.*

> An appellant cannot assign error in the supreme court on the modification of an erroneous instruction; if not content with the instruction as modified, he should not have read it to the jury. *Mississippi, etc., R. R. Co.* v. *Hardy*, 88 Miss., 732, *approved*.

FROM the circuit court of, first district, Hinds county. HON. DAVID M. MILLER, Judge.

Bertha Byrd and others, appellees, were plaintiffs in the court below; the railroad company, appellant, was defendant there. The suit was for damages on account of the alleged wrongful death of one Hiram Byrd, a brother of the plaintiffs, having neither wife, child, father nor mother, caused by being thrown as was charged from a rapidly moving train.

From a judgment in favor of the plaintiffs the defendant railroad company appealed to the supreme court; and the plaintiffs, their recovery being much less than the sum demanded by them, prosecuted a cross appeal. The facts are fully stated in the opinion of the court.

*Mayes & Longstreet,* and *Williamson, Wells & Peyton,* for appellant and cross-appellee.

It was error in the trial court to refuse the peremptory instruction asked by the defendant company. Such instruction should have been given for two reasons.

*First.* Damages could be recovered only upon proof that Byrd's death was caused by injuries negligently inflicted by defendant, and there is no such proof in the case. The evidence, instead of disclosing that Byrd's death resulted from injuries sustained when he fell from the moving train, affirmatively and indisputably, shows that his injuries thus incurred were trivial. Four reputable physicians, who knew Byrd both

before and after the fall, testified that these slight injuries did not in the slightest degree contribute to his death. Two of them made critical examination of Byrd's injuries immediately after the accident, and one of them further testified that, prior to the date of the excursion trip, Byrd had become a victim of consumption, and in any event could not have lived in this climate longer than a few months. Another physician testified that Byrd's death was caused, not by the fall from the train, but by consumption. If it be true, as a legal proposition, that plaintiffs were only entitled to recover upon proof that the death resulted from injuries sustained from the fall, then the peremptory instruction should have been granted in defendant's favor, for there was no proof that the death did so result, the uncontroverted testimony of the persons best in position to know being that the death did not result from the fall.

Second. If the fall was the cause of Byrd's death, he was the author of his own misfortune. He was voluntarily and unnecessarily upon the car platform while the train was moving. His placing himself there was not under coercion or direction of the employes of the defendant company. If he was thrown from the platform by the swaying or lurching of the train while rounding the curve, the mishap was the result of his own negligence. If he himself could not recover, the plaintiffs, his next of kin, cannot. For a passenger to sit or stand upon the platform of a car in a rapidly moving train is negligence. Unless the act can be excused by the circumstances which brought it about, it is negligence as a matter of law. *Dougherty* v. *Yazoo & M. V. R. R. Co.*, 84 Miss., 502 (s.c., 36 South. Rep., 699). We especially call the court's attention to the numerous authorities collated in the reported brief of counsel for appellee in the case cited.

The court further erred in modifying the first, fifth, seventh and eighth instructions asked by defendant. These instructions as asked were predicated of undisputed evidence which, in

fact, would have sustained a peremptory instruction for defendant. The court refused to grant these instructions as asked, and of its own motion modified them so as to leave to the jury to determine whether or not defendant had been guilty of negligence proximately causing Byrd's death after he fell from the train. This was manifest error. It is undisputed that Byrd fell from the platform when the conductor was in another part of the train, and it was at least two or three minutes before the conductor became aware of the mishap. Another train was following close behind, upon the same track, and the conductor could not stop the train without endangering the lives of the passengers. Immediately on reaching the next station, aid was sent to Byrd, and the physician of the defendant company attended to his injuries. It was accordingly unfair and erroneous for the court below to modify the instructions, and permit the jury to find for plaintiffs, although defendant was not blamable for the fall, on the idea that it was guilty of negligence after the fall, approximately contributing to the death of Byrd. What else could defendant have done to help Byrd? He was picked up as soon as practicable, and carried to Harriston and placed in charge of the defendant's competent physician.

The modification of these instructions mentioned was erroneous for another reason. There was no evidence to show that any injuries suffered by Byrd at the time of his fall proximately contributed to his death. The jury were invited to enter the field of conjecture, and to find as a fact that some neglect of Byrd on defendant's part after his fall contributed proximately to his death, when there was no evidence to support the idea.

The court below erred in overruling defendant's motion to set aside the verdict because of error in the instructions, and because it was contrary to the law and the evidence. A carrier is exonerated in law when the proximate and moving cause of an injury is the act of the injured person. No man can charge

another in damages for negligently injuring him when he has failed to exercise reasonable care himself in the premises.

A passenger who voluntarily and unnecessarily places himself on the platform of a rapidly moving car cannot hold the railroad company responsible for injuries of which his position, voluntarily and unnecessarily taken, is the efficient cause. *Fisher* v. *West Virginia & Pittsburgh R. R. Co.* (W. Va., 1896), 33 L. R. A., 69.

The conclusion is manifest, from all of the evidence, that Byrd was a man addicted to the excessive use of intoxicating liquors and was intoxicated while on the train; that he had voluntarily stationed himself upon the platform of the moving car, and as the train rounded a curve, lost his balance and fell, and from the fall sustained trivial injuries. His death several months after the mishap resulted from consumption, with which he had been afflicted for a long time before he fell from the car. The defendant, though bound to a high degree of care, was not an insurer of the safety of the deceased. Byrd was the author of his own misfortune, and alone responsible for his fall.

*Green & Green,* for appellees and cross-appellants.

Counsel for the defendant railroad company, in assigning for error the refusal of the circuit court to grant peremptory instruction in defendant's favor, contend, first, that there was no evidence that the death was caused by the wrongful act of the company; and, second, that there was contributory negligence upon the part of the deceased.

Counsel for defendant are in error in alleging that there is an entire absence of proof that Byrd's death was caused by the injuries inflicted. The condition of Byrd before the injury was proved, one of the physicians testifying that there was practically nothing the matter with his lungs. The evidence disclosed that when Byrd was thrown from the train, he was dragged for a distance of one hundred yards by the train mov-

ing thirty miles an hour, and was finally thrown by its momentum down a high embankment and rendered unconscious for a very long time. He was, moreover, left by the defendant to endure the heat of a June day, and subsequently exposed to an unusually hard, drenching rainstorm. Certainly a jury of ordinary intelligence was amply justified in saying that the death was brought about by defendant's acts of omission or negligent failure to act in leaving him thus without assistance. The first contention of opposing counsel is without foundation in fact.

Was deceased guilty of contributory negligence? The jury, drawn from the different walks of life, passed upon this question under most liberal instructions in favor of the defendant; their verdict settled it. Justice TRULY, in *Yazoo, etc., R. R. Co.* v. *Humphrey,* 83 Miss., 734 (s.c., 19 South. Rep., 105), states that "contributory negligence is simply want of ordinary care in the situation," and in his opinion cites *A. & V. R. R. Co.* v. *Jones,* 73 Miss., 110 (s.c., 36 South. Rep., 154); *V. & M. R. R. Co.* v. *McGowan,* 62 Miss., 682. In *Bell* v. *Southern Ry. Co.,* 87 Miss., 234 (s.c., 30 South. Rep., 821), WHITFIELD, C. J., says: "Whether the company was guilty of negligence, and whether the plaintiff was guilty of contributory negligence, were questions of fact which a jury should have passed upon. So many questions are integrated usually into the solution of the question of negligence that it must be a rare case of negligence which the court should take from the jury." This statement is quoted and approved by Justice CALHOON in *Stevens* v. *Y. & M. V. R. R. Co.,* 81 Miss., 195 (s.c., 32 South. Rep., 331). It is stated, in Beach on Contributory Negligence, sec. 450, that "in general it cannot be doubted that the question of negligence is a question of fact, not of law. Whenever there is any doubt as to facts, it is within the province of the jury to determine the question." And see *Barden* v. *Railroad Company,* 121 Mass., 426; Elliott on Railroads, 1633.

There was a very violent jerk of the train at the place where Byrd was thrown therefrom, so violent, in fact, as to be seen by persons on the wayside, who observed the passage of the train. The jerk occurred at a point where there was insufficient gravel on the track, and defendant's track foreman admitted that an insufficient quantity of gravel on the track would cause the engine to make violent jerks, and the bad condition of the track explains why Byrd was jerked from the moving train.

We have no fault to find with the case of *Dougherty* v. *Yazoo & M. V. Railroad Company,* 84 Miss., 502 (s.c., 36 South. Rep., 699), cited by opposing counsel, for the law on this proposition is well settled; but the jury has passed upon this case, and this court will not reverse. In *Railroad Company* v. *Paul,* 126 Fed. Rep. (C. C. A.), 157, decided in 1903, a case strikingly like this, the court said: "We think the lower court was right in leaving the question of contributory negligence to the jury," and cited *Railroad Company* v. *Converse,* 139 U. S., 469; *Railroad Company* v. *Harmon,* 147 U. S., 571; *Railroad Company* v. *Mayers,* 62 Fed. Rep., 367.

A railroad company must furnish passengers with reasonable accommodations inside its cars, and, since most of them usually do so, standing or sitting upon the platform or steps of a car when in motion is ordinarily held to be contributory negligence sufficient to bar a recovery. If, however, the company fails to provide accommodations inside its cars and a passenger is forced because of the failure to stand upon the platform, the company may be held liable for injuries received by the passenger while standing there. Circumstances alter cases. Riding upon a platform of an over-crowded car is not *per se* a negligent act. 2 Wood on Railroads, sec. 308, and cases there cited.

"A passenger is not guilty of contributory negligence in standing upon the car platform while the car is in motion if there be no vacant seat inside the car. Room inside the car for suffi-

cient accommodation of passengers means a seat for each passenger, not standing room in the passage way." *Willis* v. *Railroad Company,* 34 N. Y., 670. To the same effect is the case of *Turnbull* v. *Ericson,* 97 Fed. Rep., 891. "It is not negligence *per se* to be upon the platform of a moving car." *Railroad Company* v. *Lang,* 100 Ky., 225; *Railroad Company* v. *Kelsey,* 180 Ill., 530; *Sweetland* v. *Railroad Company,* 177 Mass., 190; *Chicago Railroad Company* v. *Newell,* 113 Ill. App., 263; *Lehr* v. *R. R. Co.,* 118 N. Y., 556.

See, also, the cases of *Worthington* v. *Railroad Company,* 64 Vt., 107, and *Goodwin* v. *Railroad Company,* 83 Maine, 203, where the issues involved a consideration of the configurations of the country and the sharp curves incident to the mountains. We have nothing of the kind in this State.

Byrd did all he was required to do under the law, and the verdict as to contributory negligence was manifestly right.

If for argument's sake it be conceded that the defendant company was not liable for the original injuries caused by the throwing of Byrd from the train, it became liable because of the grossly negligent manner in which his life was imperiled and his health injured by being left wounded and helpless upon defendant's right of way. The conductor could have backed the train to where Byrd was by placing a flagman upon the track to protect his train from other trains behind him, and this would not have left decedent exposed for a long time to the sun and the subsequent rain.

Every reasonably intelligent man knows that for a person, unconscious as a result of being thrown from a train, to be exposed for the greater part of the day to a June sun, upon wet ground, and subsequently exposed to a drenching rain, is not conducive to health. The finding of the jury upon the issue as to liability was correct. That there was a duty owing by the company to Byrd after he was hurt is shown by authority, and we refer to *Connoly* v. *Railroad Company,* 5 South. Rep. (La.),

260; *Connoly* v. *Railroad Company,* 6 South. Rep. (La.), 526; *Railroad Company* v. *Salzman,* 52 Ohio, 564; and *Dyche* v. *Vicksburg, etc., Railroad Company,* 79 Miss., 361 (s.c., 30 South. Rep., 711).

The court below erred in refusing a new trial to plaintiffs upon the question of the amount of damages. The verdict was for only $1,000. Considering the age of the deceased, his ability and intelligence, and the support he rendered to the plaintiffs, this verdict was far too small.

There are occasions when a partial new trial should be granted. *Boyd* v. *Brown,* 17 Pick. (Mass.), 461; *Pratt* v. *Boston Heel Co.,* 134 Mass., 300; *Libson* v. *Lyman,* 49 N. H., 32; *Walker* v. *Blassingame,* 17 Ala., 810; *Benton* v. *Collins,* 125 N. C., 90; *Luke* v. *Bender,* 18 Nev., 367; *Duff* v. *Duff,* 101 Cal., 4.

That the practice has not been heretofore expressly established in this State is no argument against granting such a new trial upon the sole issue of amount of damages. Aside from the common law authorities above cited, Code 1892, § 4345, would indicate that the authority to this end is by statute vested in the court. See *Moseley* v. *Jamison,* 68 Miss., 360 (s.c., 8 South. Rep., 744).

MAYES, J:, delivered the opinion of the court.

Some time in June, 1904, Hiram Byrd took passage on one of the trains of the Yazoo & Mississippi Valley Railroad Company from Natchez to New Orleans. The train on which he took his passage was an excursion train, and there is considerable conflict in the testimony as to whether or not the train was overcrowded on that occasion; but there is much testimony going to show that the train was crowded, and for this reason Byrd took a position on the platform of one of the cars, instead of taking his seat on the inside. There is also some testimony tending to show that Byrd had been drinking, and that at the time the accident befell him he was intoxicated. Byrd was a barber, about thirty

years of age, and when at work earned about fifteen to twenty dollars a week, according to some of the testimony. After passing Harriston, a station on appellant's line of railway, and while the train was turning a curve near Applewhite, Byrd was either suddenly jarred off by the lurch of the train while turning this curve, or he was accidentally pushed off by some of his companions. At all events, he fell from the train while standing outside on the platform. The passengers on board of the train immediately made known this fact to the conductor, and asked that the train be stopped and Byrd taken aboard. The conductor refused to do this, assigning as a reason that another train was soon due to follow, and he could not stop his train at this place, but when he reached the next station, some short distance further down, he would send back for Byrd. After reaching this station, Byrd was not sent back for immediately, but was not picked up for about three hours. In short, he was left to lie alongside of the track, where he had fallen, without any attention, in midsummer, for three hours or more, and in the meantime there came up a heavy rain, which he was in. Byrd died on September 6, 1904, in Wesson, Mississippi, after having spent some time in the hospital at Natchez. It was also testified to by one of the physicians in attendance on Byrd at Natchez— Dr. Chamberlain—that he had treated Byrd in May, 1904, for incipient tuberculosis, and that Byrd had marked symptoms of consumption; that he saw Byrd after the accident, and that he had only suffered some minor bruises, was walking around, and complained of his ankle; and that the injury received was not calculated to produce death, in his judgment. Dr. Brown, the physician in charge of the Natchez hospital, stated that he had known Byrd for about ten years, and that he had been several times in the hospital suffering from acute alcoholism and paralysis. When Byrd came to the hospital suffering from the injuries received from the fall, he made an examination of him, and he could not have died from the injuries received. Dr. Rowan, the physician at Wesson, who last attended him, stated that Byrd

died of septicæmia.　A peremptory instruction was asked for. after appellees had introduced their evidence, and refused by the court, and we think properly refused. .There was a judgment for plaintiffs in the sum of $1,000, and the railroad company appeals, and a cross-appeal is taken by appellees.

The fact remains that Byrd fell from the train under circumstances which may or may not have prevented his recovering anything against the company, according to the circumstances, and was allowed to lie in the sun and beating rain for three hours after he had fallen, without attention from any one, save by a negro in no way connected with the railroad company, who, seeing that a rain was coming up, pulled him out of a gully into which he had fallen, to save him from drowning.　All the facts were submitted to the jury—the fact of Byrd's being on the platform; the fact of his being permitted to remain exposed to the sun and rain for three hours; the testimony of the physicians, and as to his intoxicated condition—and, the jury having passed on the facts and holding the company liable, we are not warranted by anything that appears in the record in disturbing the verdict on the facts.　It was not negligence *per se,* under the facts shown in this case, for Byrd to be out on the platform, instead of inside of the car; but it was a question to be passed on by the jury.　Appellant cannot overcrowd its cars with passengers, making it impossible to obtain seats in safe places, and excuse itself from liability by saying a passenger under these circumstances was riding in a dangerous place.　Ordinarily, it is negligence to ride on the platform of a car, instead of in the place which is provided for the seating of passengers inside; but this is not an inflexible rule, and, when the railroad company has failed to provide sufficient cars to seat its passengers, it then becomes a question of fact as to whether a passenger was or was not guilty of negligence in riding on the platform.　This question was properly submitted to the jury under proper instructions, and we see no error.　*Lehr* v. *Steinway,* 23 N. E. Rep., 889; 2 Wood on Railroads, sec. 308.　The facts in this case are

widely different from the facts in the case of *Dougherty* v. *Railroad Co.,* 84 Miss., 502 (36 South. Rep., 699), and that case has no application here.    Mr. Dougherty was thrown from the train in trying to pass from one car to another, in the night time, while the train was running on a three-degree curve at a rate of speed of forty-five or fifty miles an hour, and the court held that if the act of going from one car to another under the circumstances was voluntary, which question had been submitted to the jury and passed on by them in favor of the railroad company—that is, that it was voluntary on the part of Dougherty—that the accident was the result of Dougherty's negligence, and he could not recover.    It was not attempted to be shown in that case, as in this, that his going on the platform was due to the overcrowding of the cars, thereby making it necessary to stand on the platform.

It is further insisted by defendants that the court erred in modifying the first, fifth, seventh, and eighth instructions asked by them.    We are relieved from the necessity of discussing whether or not the modifications complained of did or did not constitute error, since the original instructions themselves were incorrect.    The court held in the case of *Miss. Cent. R. R. Co.* v. *Hardy,* 88 Miss., 732 (41 South. Rep., 508), that where an instruction is asked, which is erroneous and is modified by the court, the modification of the instruction cannot be assigned as error, where the instruction has been used before the jury.    If the party asking the instruction is not content with it as modified, he should decline to read it to the jury, in order to avail himself of any error in the action of the court.    See, also, *Railroad Co.* v. *Suddoth,* 70 Miss., 265 (12 South. Rep., 205).

By the first instruction the jury is told that defendant company is not liable if the injury occurred to Byrd while he was voluntarily on the platform, if there was no necessity for his being there, if the injury happened "by reason of the usual and ordinary operation and running of the train."    The "usual and ordinary operation and running of the train" might itself have

been negligent, and the jury should have been told by the instruction that the defendant company was not liable for any damage which occurred "by reason of the usual and ordinary operation of the train," if they further believe from the evidence that such usual and ordinary operation and running of the train was reasonably safe; but the jury was left to surmise as to whether or not the operation of the train was reasonably safe, and this, in the face of some testimony which went to show that the train was running around a four-degree curve over a track not in perfect condition.

The fifth instruction is wrong for the same reason as the first, in that it also tells the jury that defendant is not liable under the circumstances enumerated in the instruction if they believe that the train was being operated in the usual and customary manner, without further stating that they must believe from the evidence the usual and customary manner of operating the train was reasonably safe.

The seventh instruction is wrong, because by it the jury was told that the company is not liable if they believe from the evidence that the injury to Byrd was due in part to the fact that he was occupying a position on the platform voluntarily and unnecessarily. This is not the law. Negligence of the character which exculpates the company from any liability must have been such negligence on the part of Byrd as materially contributed to the accident. It is not every negligent act, singly and alone, not materially contributing to an injury, which will relieve from liability, and the statement of the law in the instruction was incorrect and misleading.

By the eighth instruction, which is also wrong, the jury was told that the company is not liable if they believe from the evidence that Byrd was thrown from the train while unnecessarily standing on the platform, or steps, when the train was passing from a straight track to a curve. The instruction should have stated that the company was not liable, under these circum-

stances, if they believed from the evidence that the train was being run around this curve with all due care.

Railroads owe to their passengers the consideration and care of common humanity, it matters not how negligent a passenger may have been in producing the injury for which he sues. Such negligence does not absolve the railroad from the duty which it owes to him of proper attention after an accident shall have occurred, and if, when injured, the railroad company neglects this care, which common humanity would dictate, and by reason of this neglect, after the injury has occurred, a passenger suffers damage, he may recover against the railroad company for its dereliction. It was the duty of the company to carry Byrd to a place where he could receive proper treatment, and that with reasonable promptness, and not to have left him in his helpless condition, lying alongside of the track, in the hot sun and beating rain, for more than three hours, when it was not more than four or five miles to the next station from the place where he fell, and, to use the language of the conductor, "for humanity's sake there should have been something done for him." *Dyche* v. *Railroad Co.,* 79 Miss., 361 (30 South. Rep., 171); *Northern Cent. Ry. Co.* v. *State,* 29 Md., 439, 442 (96 Am. Dec., 545); *Baltimore & Ohio R. Co.* v. *State,* 41 Md., 288.

Let the judgment appealed from be affirmed, on appeal and cross-appeal.

*Affirmed.*