ILLINOIS CENTRAL RAILROAD COMPANY *v.* DILLON ET AL.

[71 South. 809.]

1. RAILROADS. *Crossing accidents. Licensees. Jury question. Duty. Negligence. Comparative negligence. Effect.*

Where a street crossing defendants railroad had been discontinued and was not used by vehicles, but pedestrians in large numbers continued to use it just as they had done before it was discontinued, a plank being placed over a ditch on one side of the crossing and fastened down for the conveniences of pedestrians using the same, "All of which was well known to the defendant railroad company, which made no protest of any kind on account of this use of the old street. In such case a pedestrian using such crossing was more than a bare licensee and the railroad company owed him the same duty that it owes to one on its tracks at a public or other crossing, namely the duty not to negligently kill or injure him."

2. RAILROADS. *Crossing accident. Jury question.*

In a suit for the death of one run down while crossing a railroad track, the question of contributory negligence was properly submitted to the jury.

3. RAILROADS. *Crossing. Duty.*

Where after a street had been discontinued a great many persons used such street to cross defendant's railroad tracks, which was well known to defendant, it was negligence for the defendant to back its engine rapidly over such crossing when the engineer

could not see in front of his backing engine within two or three car lengths.

4. SAME.

In such case while the railroad company was under no statutory duty to sound alarms for this crossing, yet its common law duty required the engineer to give signal of his approach to this much used crossing.

5. RAILROADS. *Crossing accident. Jury question.*

In such case the question of the company's negligence in failing to give warning and in backing the engine at a high rate of speed was a question for the jury.

6. RAILROADS. *Crossings. Duty of care.*

Where the view at a railroad crossing is obstructed, it is the duty of both pedestrians and railroad employees to be more careful and maintain a proper lookout when approaching such crossing, but the contributory negligence of a party killed at such crossing would only diminish the amount of the verdict in case of recovery.

APPEAL from the circuit court of Alcorn county.
HON. CLAUDE CLAYTON, Judge.

Suit by Mrs. Nannie N. Dillon and others against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Mayes, Wells, May & Sanders* and *J. M. Boone,* for appellant.

*Thomas H. Johnston,* for appellees.

SYKES, J., delivered the opinion of the court.

Suit was filed in the circuit court of Alcorn county by the appellees here against the Illinois Central Railroad Company, the appellant, for twenty-five thousand dollars damages for the alleged negligent killing of J. D. Dillon, the husband of Mrs. Nannie N. Dillon. A verdict and judgment of the court below in favor of the plaintiffs for five thousand dollars was entered, from

which this appeal is prosecuted. The material facts in the case as found by the jury were the following: The defendant railroad company was operating a railroad as a common carrier through the eastern part of the city of Corinth and within the corporate limits, and that the said railroad track involved in this controversy crosses what was once known as Foote street. That about the time the railroad was constructed, by city ordinance, this street was closed. Pedestrians, however, continued to use this old street across the railroad as a crossing, and a plank had been put over a ditch by employees of the railroad company at the point where the pedestrians crossed said railroad. That this crossing was used by one hundred and fifty or two hundred employees of certain factories in going to and coming from their work every morning and every afternoon. That the usual time of crossing in the morning was between six and seven o'clock. That the accident in question occurred in the morning between six and seven o'clock. The railroad track here runs practically north and south, and Foote street crossed the same diagonally in a southeasterly direction. That on the morning of the accident which resulted in the death of the husband of appellee, J. D. Dillon, the deceased, was going to his work, proceeding along Foote street until he reached a coal chute which was on the west side of the railroad track following the footpath used by pedestrians across said railroad track. The testimony shows that on account of a coal chute and certain houses the view of the deceased as well as that of the train crew was obstructed until the deceased came from under the coal chute and was within about six feet of the track, at which place he could see and be seen. That on the day in question, apparently without looking or listening, he walked upon the railroad track and was struck by a switch engine of the railroad company which was backing on said track at a rate of speed variously estimated from twenty to forty miles an hour, and was instantly killed. The tes-

timony of the plaintiffs' witnesses was that they heard no bell ringing nor whistle blown by the engineer. The testimony of the engineer and fireman was to the effect that the fireman was ringing the bell, but was silent as to whether or not any sort of whistle was sounded for this crossing. It is the theory of the appellant that the deceased was at best a bare licensee to whom the railroad company owed only the duty of not willfully or wantonly injuring or killing him; further, that they were under no obligation to be on the lookout for him on the track, and were under no statutory or common-law obligation to sound any signal for this crossing. It is the theory of the appellee that the defendant railroad company is liable in this case if they were guilty of any negligence, that they owed more of a duty to the deceased than simply that of not wantonly or willfully injuring him, and that under the circumstances it was their duty to have maintained a lookout for pedestrians upon this crossing. The record shows that the six mile an hour speed limit had been released by the railroad commission in the interest of appellant at this particular place, consequently this statute is not involved.

In considering what duty was owed by the appellant to the deceased in this case it is necessary to view the facts and circumstances relating to the use of this crossing or footpath by pedestrians over the track. The testimony in the record shows that while Foote street was closed so far as vehicles were concerned, pedestrians continued to use the same just as they had used it before it was vacated or closed. That every morning between the hours of six and seven o'clock employees of certain mills situated on the east side of the track crossed this railroad track at this particular place. This fact certainly must have been well known to the defendant railroad company, and by all the laws of justice and humanity they are charged with this knowledge. There was no protest of any kind by the defendant company of this use of the old street by pedestrians. In fact the

record shows that a plank had been placed over a ditch on one side of this crossing and had been fastened down to hold the same for the convenience of pedestrians using the same. This being true, we regard this as a very different case from the *Arnola Case* in 78 Miss. 787, 29 So. 768, 84 Am. St. Rep. 645, relied upon by counsel for appellee. In fact, the deceased in this case was more than a bare licensee; he was an invited licensee, sometimes called an invitee or a favored licensee, and the railroad company owed him the same duty that it owes to one on its tracks at a public or other crossing, namely, the duty not to negligently kill or injure. The question of contributory negligence of the deceased was properly submitted to the jury.

While the railroad company was under no statutory duty to sound alarms for this crossing, at the same time it is our opinion that its common-law duty required the engineer to give signals of his approach to this much-used crossing, especially is this true when the engineer knew that he was approaching this crossing at a rapid rate of speed with a backing engine at the hour when between one hundred and fifty and two hundred people crossed it. In fact, their failure to give these signals, coupled with the fact that the engine was backing at a rapid rate of speed and that the engineer could not see anything in front of his engine within two or three car lengths, in our opinion, makes out a case of negligence under the common law, which should have been submitted to the jury. In this case the conduct of the railroad company was an implied invitation to pedestrians to use this crossing. *Allen* v. *Y. & M. V. R. Co.,* 71 So. 386. This case is very different from one where only a few people are in the habit of crossing the railroad track at a certain point not at a public crossing, as was the case in that of the *McCoy Case* in 105 Miss. 737, 63 So. 221. On account of the obstructions, above set forth, to one approaching the railroad and to employees upon engines and trains of the railroad, it was

the duty of both the pedestrians and of the railroad employees to be more careful to maintain a proper lookout when approaching this crossing. However, any contributory negligence on the part of the deceased would only diminish the amount of the verdict, and the amount of this verdict leads us to believe that the jury took into consideration the contributory negligence of the deceased. In fact, we are of the opinion that the railroad company has no cause whatever to complain of the verdict or of the amount of same. The instructions given on behalf of the appellant were most liberal. We find no errors in the other assignments of error of the appellant. The case is therefore affirmed.

*Affirmed.*